**Marc J. Victor, SBN 016064**
**Jody L. Broaddus, SBN 020122**
ATTORNEYS FOR FREEDOM
3185 South Price Road
Chandler, Arizona 85248
Phone: (480) 755-7110
Fax: (480) 857-0150
Marc@AttorneyForFreedom.com
Jody@AttorneyForFreedom.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Christopher Sherlund, | Cause No.: 2:18-cv-01126-DGC |
| Plaintiff, | |
| vs. | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Jefferson B. Sessions, III, as Attorney General of the United States; The United States Department of Justice, The United States Bureau of Alcohol, Tobacco, Firearms and Explosives; Thomas E. Brandon, as Acting Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; The Federal Bureau of Investigation; Christopher Wray, as Director of the Federal Bureau of Investigation; The United States of America, | |
| Defendants. | |

Plaintiff William Christopher Sherlund ("Mr. Sherlund") hereby submits his opposition to Defendants' Motion to Dismiss and, for the reasons set forth herein, respectfully requests this Court deny Defendants' Motion.

In this Fed. R. Civ. P. 12(b)(6) proceeding, "[a]ll [of the Complaint's] allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc*., 863 F.3d 1178, 1187 (9th Cir. 2017). The

Complaint is adequate if it plead facts sufficient "to state a 'claim to relief that is plausible on its face.'" *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (9th Cir. 2013).

## MEMORANDUM OF LAW

**I.      Summary of Essential Facts.**

For about six days beginning July 31, 2008, Mr. Sherlund was involuntarily committed in California for mental health treatment, as he was considered a danger to himself or others. Complaint, ¶¶ 18-19.  Due to an adjudication by the California Department of Justice as suffering from a mental disorder, Mr. Sherlund was classified as a "prohibited possessor" under 18 U.S.C. § 922(g)(4), and he was placed in the Federal Bureau of Investigations National Instant Background Check System Mental Defective file.  *Id.* at ¶ 21.  The California adjudication imposed a five-year restriction on his possession of firearms, but that restriction has expired.  *Id.* at ¶¶ 22-23.  Years later in Arizona, Mr. Sherlund submitted an application for a concealed carry permit to the State of Arizona, which was denied by the Arizona Department of Public Safety on the grounds that the federal prohibition remained in effect because he was "adjudicated as a mental defective or committed to a mental institution," *Id.* at ¶ 21.  The Complaint alleges violations of the Second, Fifth, and Fourteenth Amendments of the U.S. Constitution by Defendants in that § 922(g)(4) imposes a lifetime prohibition on possession of a firearm against Mr. Sherlund and Defendants are denying him any avenue to have the prohibition lifted.

**II.     Plaintiff Has Standing to Bring This Lawsuit.**

Defendants contend Mr. Sherlund lacks standing under Article III of the U.S. Constitution to bring his lawsuit.  However, Mr. Sherlund's Complaint needs only to plead three elements: injury in fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992).  As established below, the Complaint pleads all three elements sufficiently to withstand the Rule 12(b) motion to dismiss.

> **A.      Injury in Fact: Unconstitutionally Prohibiting Mr. Sherlund From Obtaining and Possessing Firearms Has Already Occurred and Would Occur Again.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

To establish standing, "[f]irst, the plaintiff must have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent.'" *Renee v. Duncan*, 686 F.3d 1002, 1012 (9th Cir. 2012). Alternatively, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation and citation omitted). A threatened or expected action by government that would deprive a plaintiff of a Constitutional right, such as being prosecuted for exercising the right, is such an injury in fact. *Id.* at 2342-2343 (discussing precedents affirming standing to bring pre-enforcement challenges).

Mr. Sherlund is deemed a "prohibited possessor" under § 922(g)(4) because he was once "committed to a mental institution," and § 922 would be enforced against him if he acquires or possesses a firearm. *See* Complaint, ¶¶ 2, 6, 11, 18, 24, 25, 30, 35, 38, and 39. In fact, Mr. Sherlund has already suffered denial of the right to acquire or possess a firearm due to the prohibition under § 922(g)(4). *See* Complaint, ¶¶ 21, 25 & Exh. 2.

The Second Amendment "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 592, 635 (2008). Mr. Sherlund attempted to exercise his Second Amendment right, but he was denied due to § 922(g)(4) and the threat of federal prosecution. *See* Complaint, ¶ 21 & Exh. 2. Mr. Sherlund wants to exercise his Second Amendment right in the future. *Id.* ¶ 6. Therefore, the Complaint pleads the "injury in fact" element of standing by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 134 S. Ct. at 2342 (internal quotation and citation omitted).

     **B.**    **Causation: The Nationwide Ban is Fairly Traceable to § 922(g)(4) and the Lack of Available Relief Under 18 U.S.C. § 925(c).**

The second element for proof is showing "a causal connection between the injury and the conduct complained of," such that the injury is fairly traceable to the action challenged.  *Renee*, 686 F.3d at 1012, *quoting Lujan*, 504 U.S. at 560.  "[T]here must be causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

When a law *causes* a plaintiff to harbor an "expectation" that the law prohibiting certain conduct "might be enforced against [him]," such a plaintiff would reasonably forebear from engaging in that otherwise lawful conduct.  *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 856 (9th Cir. 2002).  The plaintiff's reasonable forbearance would be "fairly traceable" to that law.  *Id.* The causation element of standing would thus be established.

Due to being involuntarily committed for a few days for mental health reasons, Mr. Sherlund was automatically deemed a "prohibited possessor" under § 922(g), and his name was entered in the FBI National Instant Background Check System Mental Defective file.  Complaint, ¶¶ 18, 21, 24 & Exh. 2.  Thus, Mr. Sherlund is permanently barred from purchasing and possessing a firearm.  *Id., ¶* 35, *citing* § 922(g).  The State of Arizona took action to prevent Mr. Sherlund from obtaining a concealed-carry permit and notified him of his ineligibility under § 922(g)(4) to possess a firearm.  *Id.* at ¶ 21& Exh. 2.  Mr. Sherlund is therefore deterred from obtaining and possessing a firearm, and he is prohibited from exercising his Second Amendment rights for fear of criminal prosecution. *Id.*, ¶ 6. Thus, the Complaint establishes the causal connection between the operation of § 922(g)(4) and a deprivation of Mr. Sherlund's Second Amendment rights.

## C. Redressability: Relief From the § 922(g)(4) Prohibition of Ownership and Possession of Firearms Can Afford Mr. Sherlund an Important Remedy.

The third element of proof involves showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Renee*, 686 F.3d at 1012. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his

*every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982). "The plaintiffs' burden is 'relatively modest'" to show the redressability element. *Renee*, 686 F.3d at 1013. "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision." *Renee*, 686 F.3d at 1013.

To establish redressability, "[p]laintiffs need only show that there would be a 'change in a legal status,' and that a 'practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Renee*, 686 F.3d at 1013 (internal quotations omitted).

Here, Mr. Sherlund seeks to lift the ban preventing him from obtaining and possessing firearms by challenging § 922(g)(4), which renders Mr. Sherlund a "prohibited possessor" who cannot obtain or possess firearms anywhere within federal jurisdiction. *See* Complaint, ¶¶ 2, 3, 4, 8, 11, 21, 25, 30, 35, and 38. The Complaint seeks declaratory relief, declaring, among other things: (1) the application of § 922(g)(4) against Mr. Sherlund violates his Second Amendment rights; (2) the unavailability of a procedure to lift the permanent ban under § 925(c) violates Mr. Sherlund's Fifth Amendment Due Process and Second Amendment rights; and (3) Mr. Sherlund is not a "prohibited possessor" under § 922(g)(4). *See* Complaint in the Request for Relief. If this Court were to grant such relief, then Mr. Sherlund would experience a substantial "change in legal status." The potential for such legal change of status is sufficient to establish redressability and satisfy the Article III standing requirement. *See Renee*, 686 F.3d at 1013.

A judicial declaration stating Mr. Sherlund is not a "prohibited possessor" and directing Defendants to remove his name from the FBI database would allow him to be removed from the list of people banned from obtaining and possessing firearms. *See* Complaint, Request for Relief, items B and F. This would effectively restore his Second Amendment rights, subject only to individual state restrictions. This potential result establishes the redressability element of standing.

III.   **Venue in The Arizona District Court Is Proper**

Defendants request this action be dismissed or transferred to a different district court. However, Plaintiff's lawsuit can be litigated in this Court. Under 28 U.S.C. § 1391(b)(1), Defendants are entities of the federal government and are deemed to reside in every judicial district for purposes of injunctive or declaratory relief lawsuits.  28 U.S.C. § 1361("[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.")

The very purpose of the venue statutes is to assist plaintiffs with actions against the United States and its agencies. *See Stafford v. Briggs*, 444 U.S. 527, 534-535 (1980)("28 U. S. C. § 1361 provides that actions in the nature of mandamus can be brought in any district court of the United States. … The 1962 legislation thus makes it more convenient for aggrieved persons to file actions in the nature of mandamus.")

Because Mr. Sherlund was living in Arizona, was denied his Second Amendment right in Arizona, and retained counsel in Arizona to pursue a remedy, Arizona is a proper venue. Defendants have only supplied hypothetical reasons the case should proceed in a different venue. Mr. Sherlund is prohibited from exercising his Second Amendment rights in *every* American jurisdiction due to the § 922(g)(4) "prohibited possessor" designation in the NICS database.  As the Supreme Court noted in *Stafford*, the convenience of the plaintiff in a case against U.S. government entities is a statutory priority in a case seeking injunctive and declaratory relief.  *Id.* Therefore, Defendants' Motion to Dismiss on this point should be denied.

**IV.    Plaintiff's Complaint States a Viable Cause of Action Under the Second Amendment and/or the Fifth and Fourteenth Amendments.**

Mr. Sherlund seeks but a small concession to his Second Amendment: that he simply be afforded an opportunity to provide evidence regarding his mental competency in a federal proceeding to determine if § 922(g)(4)'s continuing prohibition is still constitutional *as applied* to him given that he poses no risk of harm.

**A.    Origins of Mental Illness Statutory Prohibition and Procedures for Relief.**

§ 922(g) prohibits numerous categories of people from gun ownership, including anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution." § 922(g)(4). Federal regulations clarify that "committed to a mental institution" applies only to persons who are involuntarily committed by an appropriate judicial authority. *See* 27 C.F.R. § 478.11. § 925(c) provides an avenue for relief from an otherwise permanent ban: individuals may apply "to the Attorney General for relief from the disabilities imposed by Federal laws." The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") administers the relief-from-disabilities program. 28 C.F.R. § 0.130(a)(1); 27 C.F.R. § 478.144(b). The ATF director can grant relief if satisfied "that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." § 925(c). Review of an ATF decision denying relief is available in the federal district courts. *Id.*

However, the relief procedure under Section 925(c) is not currently available because Congress defunded it. *See Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 682 (6th Cir. 2016)(discussing the relevant history). The Supreme Court has held the defunding blocked federal court jurisdiction to review claims arising under § 925(c). *Tyler*, 837 F.3d at 682.

In 2008, Congress renewed the possibility that certain prohibited individuals could have their right to possess a gun restored. To remedy weaknesses in the national instant criminal background check system, Congress authorized federal grants to encourage the states to supply accurate and up-to-date information to federal firearm databases. *Tyler*, 837 F.3d at 682, *citing* NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 103, 121 Stat. 2559, 2567 (2008) ("NIAA"). Eligibility for the grants is based, in part, on the creation of a relief-from-disabilities program that allows individuals barred by § 922(g)(4) to apply to have their rights restored. *Tyler*, 837 F.3d at 682.

Under qualifying programs, "a State court, board, commission, or other lawful authority shall grant the relief . . . if the circumstances regarding the disabilities . . . and the person's record

and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Tyler*, 837 F.3d at 682.  The state program must also provide state court de novo review of denials of relief. *Id.* at 683. As Mr. Sherlund's Complaint alleges, Defendant ATF does not provide the avenue for review and California does not have a qualifying program that would afford state court relief from the rights deprivation.  Complaint, ¶¶ 28-32.

**B.    The Permanent Prohibition Imposed by § 922(g)(4) Does Not Survive the Two-Step Inquiry.**

Defendants argue Mr. Sherlund's Complaint does not "state a legally cognizable Second Amendment claim," claiming: (1) Mr. Sherlund was deemed "mentally ill"; (2) § 922(g)(4) is a "longstanding prohibition" on firearms possession by "the 'mentally ill,'"; and (3) therefore, Mr. Sherlund has no Second Amendment right to assert.  Def. Motion [Doc. 13] at 12-14.

In *Heller*, the Supreme Court recognized the Second Amendment secures "an individual right to keep and bear arms." 554 U.S. at 577, 595.  The Second Amendment's core right under *Heller* is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.  Under *Heller,* the core right protected for "law-abiding, responsible citizens" would not necessarily override "longstanding prohibitions on the possession of firearms by felons and the mentally ill," which are "presumptively lawful."  *Id.* at 626-27 & n.26, 635.

Mr. Sherlund's claim implicates one such "presumptively lawful" regulation governing who may possess a firearm, § 922(g)(4).  That is: The Second Amendment prevents Congress from *permanently prohibiting* firearm possession by currently healthy individuals who were long ago committed to a mental institution for at most a few days.  Directly connected is Mr. Sherlund's claim of deprivation of due process rights by virtue of the unavailability of § 925(c) statutorily-authorized relief from the permanent deprivation of rights.  In deciding whether a law violates the Second Amendment, the Ninth Circuit adopted a two-step Second Amendment inquiry.  *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 960 (9th Cir. 2014).  The two-step inquiry "(1) asks whether

the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Jackson*, 746 F.3d at 960.

> **1.      § 922(g)(4)'s permanent prohibition is not *conclusively* presumed lawful.**

In addressing the first step, Defendants state: "In determining whether a given regulation falls within the scope of the Second Amendment under the first step of this inquiry, 'we ask whether [A] the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*, or [B] whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment.'" Def. Mot. [Doc 13] at 12.   Proceeding under option [A], Defendants contend the Ninth Circuit held "where the regulation at issue is one of the 'presumptively lawful measures' identified in *Heller*, the inquiry ends under the first step of the two-step analysis" and "[B]ecause of Section 922(g)(4)'s status as a "longstanding prohibition" on the possession of firearms by the "mentally ill," it does not burden conduct protected by the Second Amendment. Def. Mot. at 12, citing *Jackso*n, 746 F.3d at 960.

Here, Defendants' position errs on at least two levels.  First, the *Jackson* decision does not interpret or apply Section 922(g)(4) at all. Second, *Jackson* does not address the meaning of "presumptively lawful regulatory measures" as mentioned in *Heller*.  In 2016, the Sixth Circuit extensively analyzed the notion what the "presumptively lawful" language means in a case nearly identical to Mr. Sherlund's case.  *See Tyler*, 837 F.3d at 681, 686 (plaintiff was involuntarily committed due to a brief depressive episode 30 years prior, had a clean bill of health, but was still classed as a "prohibited possessor" under § 922(g)(4)).

The *Tyler* court observed *Heller's* "presumptively lawful" phrasing but concluded: "*Heller* only established a presumption that such bans were lawful; it did not invite courts onto an analytical off-ramp to avoid constitutional analysis." *Tyler*, 837 F.3d at 686.  "A presumption implies 'that there must exist the possibility that the ban could be unconstitutional in the face of

an as-applied challenge.'" *Id.* Thus, the *Tyler* court did "not take *Heller*'s "presumptively lawful" dictum to shield § 922(g)(4) from constitutional scrutiny. "The mere fact that Congress created a categorical ban does not give the government a free pass; it must still be shown that the presumption applies in the instant case." *Tyler*, 837 F.3d at 686-87. *See also United States v. Skoien (Skoien II)*, 614 F.3d 638 (7th Cir. 2010), which stated the presumptive lawfulness of longstanding bans is precautionary in *Heller*, not conclusive, as follows:

> The language . . . warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. *What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open.* The opinion is not a comprehensive code; it is just an explanation for the Court's disposition.

*Skoien II*, 614 F.3d at 640 (emphasis added), *quoted in Tyler*, 837 F.3d at 687.

Defendants treat "presumptively lawful" language as a *conclusive presumption*.[1]  *Heller* nowhere states a conclusive presumption on this issue, and neither do *Jackson* nor *Chovan I*, which are cited by Defendants. Thus, laws prohibiting people with mental illness from possessing firearms are subject to a *rebuttable* presumption of validity under the Second Amendment. But if a party can show a particular law *as applied* violates the Second Amendment in the given situation, *Heller's* holdings and legal principles do not prevent a court from hearing the arguments.

### 2.       The § 922(g)(4) prohibition is not a "longstanding prohibition."

Defendants contend § 922(g)(4) is a "longstanding prohibition" that enjoys the presumption of lawfulness. Def. Mot. at 12. However, the *Tyler* court concluded § 922(g)(4) is *not* a longstanding prohibition that automatically trumps core Second Amendment rights. *Tyler*, 837 F.3d at 687. Indeed, "legal limits on the possession of firearms by the mentally ill . . . are of

---

[1] A *rebuttable presumption* is an inference drawn from facts, which may be overcome by contrary evidence. *Black's Law Dictionary* (10th ed. 2014). A *conclusive presumption* is a "presumption that cannot be overcome by any additional evidence or argument" because it is deemed to irrefutably establish a fact. *Id.*

20th Century vintage." *Skoien II*, 614 F.3d at 641.  §922(g)(4) was not enacted until 1968.  Gun

Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1220.  Further, the *Tyler* court declared:

> [T]he parties have produced scant historical evidence conclusively supporting a permanent ban on the possession of guns by anyone who has been committed to a mental institution. In the absence of such evidence, it would be odd to rely solely on *Heller* to rubber stamp the legislature's power to permanently exclude individuals from a fundamental right based on a past involuntary commitment.

*Tyler*, 837 F.3d at 687.

### 3.      The § 922(g)(4) prohibition need not be permanent.

Defendants imply that Mr. Sherlund falls into a category of persons permanently barred

from firearms possession § 922(g)(4) because of "mental illness."  Def. Mot. at 3, 14, 16, 17, 18.

The *Heller* decision referred to bans applying to "the mentally ill," *Heller*, 554 U.S. at 626, and

Defendants use that phrasing as a legal talisman.  The *Tyler* court, however, observed "§ 922(g)(4)

does not use the phrase 'mentally ill,' nor does it attempt to prohibit all currently mentally ill

persons from firearm possession. Rather, the statute uses prior judicial adjudications -

incompetency and involuntary commitment - as proxies for mental illness."  *Tyler*, 837 F.3d at

687.  Congress recognized "mental illness is not necessarily a permanent impediment" to firearms

possession; after all, Congress enacted the NIAA that allows states to restore the right to possess

firearms to persons who were previously committed.  *Tyler*, 837 F.3d at 687-88, *citing* 153 Cong.

Rec. 28,948 (2007) (statement of Rep. C. McCarthy)("[r]ecogniz[ing] that mental illness is not

necessarily a permanent impediment" and noting that the NICS "would . . . allow States to

establish procedures that permit a person disqualified on the basis of legal mental illness to prove

to the State that he or she no longer poses a danger to society.")

Defendants contend Mr. Sherlund should be permanently banned from firearms possession

because he was committed for a few days.  *See* Def. Mot. at 14, 16, 17, 18, 19, 20.  The *Tyler*

court rejected a similar argument:

> To rely solely on *Heller's* presumption here would amount to a judicial endorsement of Congress's power to declare, "Once mentally ill, always so." This we will not do.

> *Heller's* presumption of lawfulness should not be used to enshrine a permanent stigma on anyone who has ever been committed to a mental institution for whatever reason. Some sort of showing must be made to support Congress's adoption of prior involuntary commitments as a basis for a categorical, permanent limitation on the Second Amendment right to bear arms. This conclusion is particularly appropriate in this case. [Plaintiff's] complaint and supporting documents suggest that [plaintiff] is thirty years removed from a brief depressive episode and that he has had no intervening mental health or substance abuse problems since that time. This factual scenario calls into question the applicability of § 922(g)(4)'s lifetime ban to [plaintiff] and likewise calls into question the applicability of *Heller's* presumption of lawfulness to his Second Amendment claim.

*Tyler*, 837 F.3d at 688.

### 4.     § 922(g)(4)'s permanent prohibition burdens Second Amendment rights.

As to the two-step inquiry of the Constitutionality of § 922(g)(4), the first step "asks whether the challenged law burdens conduct protected by the Second Amendment." *Jackson*, 746 F.3d at 960. § 922(g)(4) prohibits a class of persons - those with a prior involuntary commitment - and this Court must determine whether those people, rather than their conduct, fall completely outside the reach of the Second Amendment.  This initial first-step analysis looks at a "historical understanding of the scope of the [Second Amendment] right." *Jackson*, 746 F.3d at 960.  Given the historical understanding, the Court considers "whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment." *Id.* at 960.

Defendant offered *no* historical evidence that a person involuntarily committed for a few days for a mental health concern should be forever deprived of the right to possess firearms.  The *Tyler* court expressly looked for evidence that might establish an historical prohibition on firearms possession by persons with mental health issues.  *Tyler*, 837 F.3d at 689-89 (scrutinizing the submitted materials).  The historical evidence just did not exist.  "Ultimately, we agree with the district court that the 'historical evidence cited by *Heller* and [the government] does not directly support the proposition that persons who were once committed due to mental illness are forever ineligible to regain their Second Amendment rights." *Tyler*, 837 F.3d at 689.  Rather, "people

- 12 -

who have been involuntarily committed are not categorically unprotected by the Second Amendment." *Tyler*, 837 F.3d at 690.

### 5. The second step of inquiry points to intermediate scrutiny.

Given § 922(g)(4) burdens the Second Amendment rights of the affected people, the second step for the Court is "to apply an appropriate level of scrutiny." *Jackson*, 746 F.3d at 960. "The level of scrutiny depends upon '(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right.'" *Id.* at 963.

On the first point: The Ninth Circuit in J*ackson* held that an ordinance requiring the firearm owner to lock up the firearm at all times in the home (except when physically carrying it) came close to the core of the Second Amendment. *Id.* at 963-64. After all, *Heller* expressly held unconstitutional a D.C. law that effectively prohibited possession of a sidearm in a home, and prohibition interfered heavily with the right to self and home defense. The ordinance in *Jackson* similarly interfered with self and home defense. *Id.* The laws in both *Heller* and *Jackson* tread substantially on the Second Amendment's protection of the core right to possess a firearm in the home for defense.

In Mr. Sherlund's case, the lifelong ban imposed by § 922(g)(4) treads substantially upon the Second Amendment core right, as it prohibits Mr. Sherlund from having the home defense protection a firearm affords. Also, the unavailability of the § 925(c) procedure for relief from the permanent ban compounds the deprivation of the core right.

On the second point: The *Jackson* decision held the firearm storage requirement law did not severely burden the core right of self-defense in the home. *Jackson*, 746 F.3d at 964-65. That law did not prevent a person from having the firearm in the home, so a firearm could still be possessed for defense. *Id.* In Mr. Sherlund's case, however, the § 922(g)(4) permanent ban coupled with the lack of § 925(c) avenue for relief imposes a more severe burden upon the Second Amendment core right than occurred in *Jackson*.

Thus, under *Jackson* and *Tyler*, § 922(g)(4) violates the Second Amendment when, *as applied*, that provision improperly burdens an individual's exercise of right to possess firearms in the home.  Both precedents employed the intermediate scrutiny test to the challenged law.  Under that test, the law can be upheld only if "(1) the government's stated objective [is] significant, substantial, or important; and (2) [there is] a reasonable fit between the challenged regulation and the asserted objective."  *Jackson*, 746 F.3d at 965.

### 6. Intermediate scrutiny must be applied to § 922(g)(4) and the absence of § 925(c) relief.

In Mr. Sherlund's case, the challenged law is not just § 922(g)(4) – the challenge is to the permanent ban under § 922(g)(4) *coupled with* the total unavailability of the relief Congress mandated via § 925(c).  The intermediate scrutiny must examine the combined legal structure, which is exactly how *Tyler* applied the test.  *Tyler,* 837 F.3d at 685 (addressing plaintiff's claim by noting the Fifth and Fourteenth Amendment due process claims "were coterminous with his Second Amendment claim").

### (a) The government interest in § 922(g)(4) is important.

Under *Jackson,* "the first prong of intermediate scrutiny review, whether the government's stated objective is significant, substantial, or important" starts with "defin[ing] the government's objective."  *Jackson*, 746 F.3d at 965.  As *Tyler* observed: "The animating interest of § 922(g)(4) 'was to keep firearms out of the hands of presumptively risky people.'"  *Id.* at 693.  Section 922(g)(4) aims not only at a general interest in restricting firearms from criminals and incompetent users, but also to "cut down or eliminate firearms deaths caused by persons who are not criminals, but who commit sudden, unpremeditated crimes with firearms as a result of mental disturbances."  *Id.* at 693.  That government interest is substantial and important.

### (b) The permanent ban under § 922(g)(4), unrelieved by § 925(c) or the NIAA, is not substantially related to the government interest.

- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The next question under *Jackson* is whether the challenged law is "substantially related" to the important government interest. *Jackson*, 746 F.3d at 966. In Mr. Sherlund's case, the challenged law is the lifetime ban under § 922(g)(4) coupled with the total unavailability of the relief Congress under § 925(c). The *Tyler* court received Congressional observations and other evidence showing "individuals with proven histories of mental illness and with recent involuntary commitments" pose greater risks to themselves in suicide and to society in general through violence. *Tyler*, 837 F.3d at 695-97. But, the *Tyler* court concluded:

> None of the government's evidence squarely answers the key question at the heart of this case: Is it reasonably necessary to forever bar all previously institutionalized persons from owning a firearm? But perhaps the biggest problem for the government is *Congress's most recent answer to this very question: No, it is not.*

*Tyler*, 837 F.3d at 697 (emphasis added).

Congress imposed the § 922(g)(4) ban, but also provided a procedure for relief from the ban via § 925(c). When funding was withheld from carrying out § 925(c) relief process, Congress remedied the problem by enacting the NIAA in 2008 (providing grants to states to implement relief from the otherwise permanent lifetime § 922(g)(4) ban).

As in *Tyler*, the legal regime Mr. Sherlund faces, does not pass the "substantial relation to government interest" part of the intermediate scrutiny test. In *Tyler*, "[t]he government [had] not presented sufficient evidence of the continued risk [of suicide or violence] presented by persons who were previously committed." *Id.* at 696. Thus, the *Tyler* court held:

> We cannot conclude, based on the current record, that the government has carried its burden to establish a reasonable fit between the important goals of reducing crime and suicides and § 922(g)(4)'s permanent disarmament of all persons with a prior commitment. There is no indication of the continued risk presented by people who were involuntarily committed many years ago *and who have no history of intervening mental illness, criminal activity, or substance abuse*.

*Tyler*, 837 F.3d at 699 (emphasis added).

### (c)     Defendants' submissions do not supply the necessary evidence to satisfy Tyler's requirement.

Defendants provided journal articles to bolster their position, which was found insufficient when these same Defendants were before the Sixth Circuit.  These articles do not overcome the deficiencies in proof, with one dubious possible exception.[2]  Defendants' Motion asserts:

> Of note, the Sixth Circuit in *Tyler* … allowed a Second Amendment challenge to Section 922(g)(4) following the denial of an attempted purchase of a weapon to go forward because it lacked any "longitudinal evidence documenting that previously committed people, on average, pose a greater threat of violence than members of the general public." [] The Chung study, published after the … *Tyler* opinion, provides the very evidence of persistent continued risk that the Sixth Circuit found lacking at the motion to dismiss stage in that case.

Def. Mot. at 18 n.6 (internal citations omitted).

Defendants' position is incorrect.  The Chung study, Darrell Thomas Chung, *et al*., *Suicide Rates After Discharge From Psychiatric Facilities: A Systematic Review and Metaanalysis*, 74 JAMA Psychiatry 694 (July 2017) ("*Chung study*"), which was cited by Defendants does not supply what the *Tyler* court lacked.  Tyler rejected the government's case because: "There is no indication of the continued risk presented by people who were involuntarily committed many years ago *and who have no history of intervening mental illness, criminal activity, or substance abuse*." *Tyler*, 837 F.3d at 699 (emphasis added).  The Chung study *does not provide any information* on the key distinguishing factor: history of intervening mental illness or drug abuse.

The Chung study is a meta-analysis, *i.e.,* a statistical correlation of dozens of studies performed by others, and the authors admit:

> [T]he included studies did not report on the extent of any association between *readmission* and suicide. The association between readmission and suicide might matter because we found that samples of first admission patients had a lower post discharge suicide rate than samples of patients with a mix of first-time and previous patients. This finding suggests that *readmission might be an important suicide risk factor*.

---

[2] Defendants twice quote from *Dickerson v. New Banner Inst*., 460 U.S. 103, 116, 103 S. Ct. 986 (1983), where it said: "Congress obviously felt that such a person [legally disqualified under § 922(g)(4)], though unfortunate, was too much of a risk to be allowed firearms privileges."  That *obiter dicta* does not control, for two reasons: (1) *Dickerson* dealt with the effects of the expunction of a state criminal conviction, not with any mental disability issue; and (2) *Dickerson* backtracked from that global statement when it described the relief available under § 925(c).  *See Dickerson*, 460 U.S. at 117-118.

*Chung study*, *supra,* at 695 (emphasis added).

The Chung authors admit their meta-analysis did not report facts involving "[a]n increase in the suicide rate of admitted and discharged patients might be attributable to multiple factors, including changing legal and other criteria for admission, shorter lengths of inpatient treatment, *increased prevalence of substance use*, and a *greater acuity of illness among those admitted in the era of deinstitutionalization*." *Chung study*, at 695 (emphasis added). Notably, these authors warned the "aggregate" data is "not necessarily applicable to individual patients." *Id.* at 699.

**V.    Plaintiff's Due Process and Equal Protection Causes of Action Prevent Waiver of the Core Second Amendment Cause of Action.**

Mr. Sherlund's Complaint is patterned after the action filed in *Tyler*, where the plaintiff alleged claims under the Second, Fifth, and Fourteenth Amendments, based upon the same situation as Mr. Sherlund's. The *Tyler* court recognized the claims as "coterminous" and treated them as one Second Amendment claim instead of three. *Tyler,* 837 F.3d at 685. The court in *Tyler* found plaintiff's complaint viable against the government's motion to dismiss. *Id.* at 699. Mr. Sherlund simply asks this Court to address the deprivation of his Second Amendment right in part due to deprivation of the review procedure under § 925(c), just as requested in *Tyler*.

**VI.    Conclusion**

For the reasons set forth above, Plaintiff respectfully requests Defendants' Motion to Dismiss be denied in its entirety.

DATED this 1st day of August, 2018.

ATTORNEYS FOR FREEDOM

By:  __*/s/ Jody L. Broaddus*_____
Marc J. Victor, Esq.
Jody L. Broaddus, Esq.
*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF MAILING**

I hereby certify that this 1st day of August, 2018, I electronically transmitted this Response to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following registrants, and a copy was also sent by first class mail to:

ADAM R. SMART
Assistant United States Attorney
N.C. State Bar No. 31797
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004
Adam.Smart@usdoj.gov

*/s/ Alexzandria Thompson*