ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

ADAM R. SMART
Assistant United States Attorney
N.C. State Bar No. 31797
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ  85004
Telephone:  (602) 514-7500
Fax:  (602) 514-7693
Adam.Smart@usdoj.gov

*Attorneys for the Federal Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| William Christopher Sherlund,<br><br>                Plaintiff,<br>v.<br><br>Jefferson B. Sessions, III, Attorney General, Department of Justice; Thomas E. Brandon, Acting Director, Bureau of Alcohol, Tobacco, Firearms and Explosives; Christopher Wray, Director, Federal Bureau of Investigation,<br><br>                Defendants. | CV-18-01126-PHX-DGC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

Defendants file this reply in support of their motion to dismiss Plaintiff's complaint (1) for lack of standing; (2) for improper venue; and (3) for failure to state a valid constitutional claim.

**I.      Plaintiff has not established standing.**

Plaintiff asserts that he attempted to exercise his Second Amendment rights by applying for a concealed carry permit in Arizona (Doc 16 at 3 (citing Doc. 1 ¶ 21, Ex. 2)), and that this action suffices to show an injury in fact.  To be clear, Plaintiff did not allege that he attempted to purchase a firearm, rather that he applied for a concealed carry permit – a matter not protected by the Second Amendment.  *Peruta v. Cty. of San Diego*, 824 F.3d 919,

939 (9th Cir. 2016).  Plaintiff also ignores the simultaneous, and independent reason that he was denied a concealed carry permit by the State of Arizona, A.R.S. § 13-3101(7).  Plaintiff makes no effort to address any of the cases cited by Defendants finding a lack of standing where an independent, unchallenged law would still bar the conduct at issue.  (*See* Doc. 15 at 5-6).  Plaintiff does not dispute that Arizona properly applied A.R.S. § 12-3101(7), nor does he dispute that he would be a prohibited possessor under that statute or the comparable New Jersey statutes, N.J.S. §§ 2C:39-7; 2C:58-3.  In fact, in the next to last sentence of his standing section, Plaintiff acknowledges that even if the Court were to grant all the relief he seeks, he would still be subject to individual state restrictions.  (Doc. 16 at 5).

In addition, Plaintiff's complaint and brief raise only a generalized claim that he desires to purchase a firearm and a non-specific fear of prosecution.  This too is insufficient to establish standing.  In the Ninth Circuit, standing to bring a pre-enforcement challenge to a statute or regulation requires a showing that a plaintiff faces a genuine threat of prosecution, not just a general desire to engage in activities prohibited by the statute at issue.  *Clark v. City of Seattle*, No. 17-35693, 2018 WL 3763527, at *7 (9th Cir. Aug. 9, 2018); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996); *Zaitzeff v. City of Seattle*, No. 2:16-CV-00244-BAT, 2016 WL 6084930, at *4 (W.D. Wash. Oct. 18, 2016), *aff'd*, 703 F. App'x 594 (9th Cir. 2017).  Plaintiff has made no allegation that he faces a genuine or imminent threat of prosecution at the moment.  Accordingly, this case should be dismissed for lack of standing.

## II.    Plaintiff has not established venue is proper in this district, or in the alternative venue should be transferred to the District of New Jersey.

### A.    Plaintiff has failed to show this district is the proper venue.

In response to Defendants' venue argument, Plaintiff points to the jurisdictional portion of the Mandamus and Jurisdiction Act of 1962 (the "Act"), 28 U.S.C. § 1361.[1]  That statute provides: "The district courts shall have original jurisdiction of any action in the nature

---

[1] It is doubtful that Section 1361 even applies to this action as it is not "in the nature of mandamus."  Plaintiff has not requested any of the Defendants to perform a specific act, much less one that is "ministerial and so plainly prescribed it is free from doubt." *Oregon Natural Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir.1995).

of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, jurisdiction and venue are separate and distinct concepts. *McKenzie v. AT&T Servs., Inc.*, No. 15-CV-02325-TLN-CKD, 2017 WL 698274, at *2 (E.D. Cal. Feb. 21, 2017) (citing *Libby, McNeill, and Libby v. City Nat. Bank*, 592 F.2d 504, 510 (9th Cir. 1978) ("Venue is not jurisdictional."). The Act does contain a separate venue provision – Section 1391(e), the one addressed in Defendants' opening brief. *See Stafford v. Briggs*, 444 U.S. 527, 540 (1980); *see also Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015). While the Act provides subject matter jurisdiction over actions in the nature of mandamus to all district courts, it is still necessary to determine proper venue under Section 1391(e). *Sutain v. Shapiro & Lieberman*, 678 F.2d 115, 117 (9th Cir. 1982).

Plaintiff does assert that "[b]ecause Mr. Sherlund was living in Arizona, was denied his Second Amendment right in Arizona, and retained counsel in Arizona to pursue a remedy, Arizona is a proper venue." (Doc. 16 at 6). That Plaintiff at one time (not when he filed suit) resided in Arizona does not establish venue under Section 1391(e), as venue is determined at the time of filing suit. *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346 (D. Or. 1991); *Technograph Printed Circuits, Ltd. v. Packard Bell Elecs. Corp.*, 290 F. Supp. 308, 326 (C.D. Cal. 1968). That Plaintiff retained an attorney here in Arizona is irrelevant. Otherwise, a plaintiff could avoid the limitations of 1391(e) by hiring an attorney in whatever district the party wishes to file suit. Finally, Plaintiff's assertion that his Second Amendment rights were violated in Arizona does not establish that a substantial part of the events giving rise to this action occurred in Arizona. Plaintiff is not actually challenging the concealed carry permit application denial by the State of Arizona, and that denial does not amount to a Second Amendment violation. *See Peruta*, 824 F.3d at 939. Rather, Plaintiff merely cites it as purportedly providing notice to him that several years earlier as a result of his commitment at UCLA, he became a prohibited possessor under Federal law. *See Noodles Dev., LP v. DaNoonas, LLC*, No. CV-08-2083-PHX-DGC, 2009 WL 1097537, at *2 (D. Ariz. Apr. 22, 2009) ("Events or omissions that might only have some tangential connection with, or no real relationship to, the claims in litigation are not sufficiently 'substantial' to support venue.")

(citation omitted).   Plaintiff goes even further, arguing that because he is a prohibited possessor under federal law, any federal district would be a proper venue.  The assertion that venue would be proper in any district because federal law applies on a nationwide basis, even if there is no material connection with that district, has no support in the law.  Thus, this Court should dismiss this action without prejudice for improper venue, or in the alternative, transfer it to an appropriate venue pursuant to 28 U.S.C. § 1406(a).

**B.      This Court should transfer this case to the District of New Jersey.**

Plaintiff does not appear to address any of the arguments made in connection with Defendants' permissive venue transfer motion under Section 1404(a).  He does not dispute that the action could have been brought in the District of New Jersey, nor does he address any of the convenience of parties and witnesses/interest of justice factors.  Plaintiff's assertion that he at one time lived in Arizona is not pertinent to the present determination.  Nor is the fact that Plaintiff's counsel is located in Arizona.  *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004); *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973); *Sypert v. Miner*, 266 F.2d 196, 199 (7th Cir. 1959); S*zegedy v. Keystone Food Prod.*, Inc., No. CV 08-5369 CAS(FFMX), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009; *see also Sanchez-Fuentes v. I.N.S.*, No. 92-70625, 1993 WL 460677 (9th Cir. Nov. 9, 1993) (unpublished) (citing *Solomon* and *Sypert* favorably in an appeal of denial of a request to transfer an immigration appeal*).*  Plaintiff dismissively refers to Defendants' discussion of the applicable factors as "hypothetical reasons," but does not challenge the actual substance of those reasons.  (Doc. 16 at 6).  He does not dispute that his residence is New Jersey, the absence of any witnesses would be subject to compulsory process in the District of Arizona, or the fact that the majority of witnesses reside in New Jersey.  To the extent he asserts a generalized fear of prosecution (which is not enough to establish subject matter jurisdiction), presumably such fear relates to prosecution in the district of New Jersey.  Balancing the Section 1404(a) factors set forth in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), under 28 U.S.C. § 1404(a), the Court should transfer this case to the District of New Jersey.

### III.    Plaintiff's constitutional claims lack merit.

#### A.    Plaintiff has conceded that his due process and equal protection claims are subject to dismissal.

In his response, Plaintiff has conceded that his due process and equal protection claims are merely recasting of his Second Amendment claims, and more properly analyzed under that amendment.  (Doc. 16 at 17).  Accordingly, for the reasons set forth in *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011), *vacated by* 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming the district court's decision to dismiss the Second Amendment claim), *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001), and *Teixeira v. Cty. of Alameda*, 822 F.3d 1047, 1052 (9th Cir.), *reh'g en banc*, 873 F.3d 670 (9th Cir. 2017), this Court should dismiss Plaintiff's equal protection and due process claims.

To the extent Plaintiff is asserting a challenge to his inability to use Section 925(c) due to Congress' lack of funding (Doc. 16 at 6-7, 14), such a claim is foreclosed.  *See United States v. Bean*, 537 U.S. 71, 76 (2002); *see also Burch v. Dept of the Treasury*, 120 F.3d 1087 (1997) (dismissing equal protection challenge); *Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216, 221 (3d Cir. 2002) (collecting circuit cases prior to *Bean*).  He appears to be making a similar argument to the one rejected in *Black v. Snow*, 272 F. Supp. 2d 21, 34 (D.D.C. 2003), *aff'd sub nom., Black v. Ashcroft*, 110 F. App'x 130 (D.C. Cir. 2004).  Plaintiff is not arguing the ban in Section 922(g)(4) is unconstitutional on its face, but rather, that he should be afforded an opportunity to show he is not presently dangerous due to mental illness.  (Doc. 16 at 7).  However, as explained by the district court in *Black*, relying on the Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), where the categorical bar is based on status, i.e. prior conviction there, and prior commitment here, due process affords no right to a "bootless exercise." *Snow*, 272 F. Supp. 2d at 34.  "It is unfortunate that Congress has not funded a process that should be used to allow worthy applicants to again possess firearms. . . . The funding of the program to consider applications is, however, a political and not a legal issue." *United States v. Fullerton*, 2007 WL 4460443, at *2 (D.S.D. Dec. 18, 2007).

1      **B.     Plaintiff's Second Amendment challenge to Section 922(g)(4) fails.**

2          *1.     Because the regulation at issue is presumptively lawful the inquiry ends.*

3      Plaintiff argues that this Court should adopt the reasoning of the Sixth Circuit in *Tyler*

4  *v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016), to hold that the

5  "presumptively lawful" categories identified in *Heller* are rebuttable presumptions.   This

6  argument, however, is contrary to Supreme Court and Ninth Circuit law.  The Supreme Court

7  in *Heller* stated that its decision "should [not] be taken to cast doubt on longstanding

8  prohibitions on the possession of firearms by felons and the mentally ill . . ."  *Dist. of*

9  *Columbia v. Heller*, 554 U.S. 570, 635 (2008).  In its interpretations of this language, the

10  Ninth Circuit has not allowed as applied Second Amendment challenges to either of the

11  categorical prohibitions mentioned by the court in *Heller*, and codified at 18 U.S.C. §

12  922(g)(1) (ban on possession rights for felons) or 18 U.S.C. § 922(g)(4) (ban on possession

13  rights for those who have been committed to a mental institution).  In fact, in *Jackson v. City*

14  *& Cty. of San Francisco*, the Ninth Circuit explicitly held that laws can be upheld without

15  any further analysis if (1) the law "can be traced to the founding era and [is] historically

16  understood to fall outside of the Second Amendment's scope; or (2) the law "fall[s] within

17  the limited category of 'presumptively lawful regulatory measures' identified in *Heller*.  746

18  F.3d 953, 960 (9th Cir. 2014).  The Ninth Circuit has repeated this holding in *Mahoney v.*

19  *Sessions*, 871 F.3d 873, 878 (9th Cir. 2017), *cert. denied sub nom. Mahoney v. City of Seattle,*

20  *Wash.*, 138 S. Ct. 1441, 200 L. Ed. 2d 717 (2018) and *Silvester v. Harris*, 843 F.3d 816, 821

21  (9th Cir. 2016), *cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945, 200 L. Ed. 2d 293

22  (2018).   Again, this is consistent with the only two cases in this Circuit to address Section

23  922(g)(4),  *Petramala v. United States Dept. of Justice*, No. CV 10–2002–PHX–FJM, 2011

24  WL 3880826, at *2 (D. Ariz. Sept. 2, 2011), *affirmed*, 481 F. App'x 395, 396 (9th Cir. 2012)),

25  and *Mai v. United States*, No. C17-0561 RAJ, 2018 WL 784582, at *4 (W.D. Wash. Feb. 8,

26  2018).   Although neither is binding precedent, the logic of each is persuasive when

27  considered in context of the binding precedent of *Jackson, Silvester* and *Mahoney*.

28

Again, the Ninth Circuit's jurisprudence with respect to the other "presumptively lawful" category identified in *Heller* is instructive.  In *Vongxay*, the Ninth Circuit rejected a challenge to Section 922(g)(1) because under *Heller*, "felons are categorically different from the individuals who have a fundamental right to bear arms."  *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010); *see also Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014) (relying on *Vongxay* to again uphold 18 U.S.C. § 922(g)(1) as constitutional); *United States v. Chovan*, 735 F.3d 1127, 1144–45 (9th Cir. 2013) (Bea, J., concurring) ("The Court in *Heller* seemed to equate the status of a felon ... with a presumptive disqualification from the Second Amendment right.").  Notably, in *United States v. Philips*, that *Vongxay* "foreclose[d]" a Second Amendment challenge to 922(g)(1) on the basis that the plaintiff's felony was "non-violent."  *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016).  In other words, there could be no "as applied" challenge to Section 922(g)(1). Plaintiff puts forth no reason why this repeated Ninth Circuit reasoning would not apply to Section 922(g)(4), the other prohibition called out by *Heller*.  *See Mai*, 2018 WL 784582, at *4 (relying on *Phillips* to reject an assertion that an as applied challenge to Section 922(g)(4) was available when the plaintiff asserted he no longer suffered from the "condition" for which he had been committed approximately 18 years prior).  As Plaintiff concedes, Section 922(g)(4) implicates this "presumptively lawful" category.  (*See* Doc. 16 at 8 ln. 19-20).  Thus, because the law at issue here fits within the presumptively lawful category of regulations set forth in *Heller*, under binding Ninth Circuit precedent, the inquiry ends. [2]

### 2. *Restrictions on the use of weapons by the mentally ill are outside the historical understanding of the protections of the Second Amendment.*

Even if inclusion within the presumptively lawful category did not end the inquiry, This Court would be similarly justified in dismissing Plaintiffs' claim because Section

---

[2] A recent opinion by the Ninth Circuit bypassed the presumptively lawful inquiry as it pertains to "conditions and qualifications on the commercial sale of arms", moving directly to an intermediate scrutiny analysis.  *Pena v. Lindley*, No. 15-15449, 2018 WL 3673149, at *4 (9th Cir. Aug. 3, 2018).  However, this was only in the context of that specific provision, not the language on felons or the mentally ill, and does not change the fact that the two-step inquiry applies, nor does it overrule, *Chovan*, *Jackson*, *et al.*

922(g)(4) is outside the scope of the historical understanding of the Second Amendment. Plaintiff relies on *Tyler* and the Seventh Circuit's decision in *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc), to assert otherwise on the basis that Section 922(g)(4) was not enacted until the twentieth century.   However, his arguments are misplaced.  The Ninth Circuit has explicitly noted that regulations placed on the books in the twentieth century can "demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record."  *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015).  The full discussion in *Skoien* (rather than the limited excerpt Plaintiff provides), is consistent with this recognition.  The Seventh Circuit recognized the validity of restrictions on possession by felons and mentally ill despite the first federal statutes restricting such rights being enacted in 1938 and 1968 respectively.  *Skoien*, 614 F.3d at 641; *see also Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 408 (7th Cir. 2015) (discussing ban on machine guns imposed in 1927).

The Court in *Heller* recognized as "the predecessor to our Second Amendment," 554 U.S. at 593, the right to arms in the 1689 English Declaration of Rights, which was understood to be consistent with the disarmament of "any person or persons" judged "dangerous to the Peace of the Kingdome" under the 1662 Militia Act, 13 & 14 Car. 2, c. 3, § 1 (1662) (Eng.).  *See* Joyce Lee Malcolm, To Keep and Bear Arms 123 (1994).  In the American colonies, disarmament of individuals perceived to be dangerous also was frequent, and such actions were not viewed as inconsistent with the right to bear arms.  *See id.* at 140-41; *see also Vongxay*, 594 F.3d at 1118; *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010).  Other courts have found sufficient evidence that the Second Amendment was not understood by the founding fathers to prohibit restrictions on the disarming of certain classes of people, including criminals, minors, and the mentally ill, relying on the virtuous citizen theory.  *See Mance v. Sessions*, No. 15-10311, 2018 WL 3520063, at *11 (5th Cir. July 20, 2018); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 201 (5th Cir. 2012) (citing Glenn Harlan Reynolds, A Critical Guide to the Second Amendment, 62 Tenn. L. Rev. 461, 480 (1995); Don B. Kates Jr., The

Second Amendment: A Dialogue, 49 Law & Contemp. Probs 143, 146 (1986)); *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009). Indeed, historically, persons with a history of mental disturbance were often physically isolated from the community at large through confinement at home or in welfare and penal institutions. Gerald N. Grob, The Mad Among Us: A History of the Care of America's Mentally Ill 5-21, 29, 43 (1994). Thus, "the absence of historical statutory prohibitions on firearm possession [by such persons] may have been the consequence of the fact that in eighteenth-century America, justices of the peace were authorized to lock up" persons deemed too dangerous due to mental illness," *Yancey*, 621 F.3d at 685 (internal quotations omitted), obviating the need for laws formally disarming them.

Plaintiff thus falls within a category of individuals whose possession of firearms may be regulated without offending the Second Amendment, as historically understood. Accordingly, Plaintiff's challenge to 922(g)(4) should be dismissed.

### 3. Even if means-end scrutiny applies, Section 922(g)(4) satisfies it.

While the Court need not reach this inquiry, where Second Amendment rights are at issue, means-end scrutiny of the regulation is appropriate. *United States v. Chovan*, 735 F.3d at 1136. Intermediate scrutiny is the appropriate level of means-end scrutiny to apply here. *Id.* at 1127; (*see also* Doc. 6 at 14). Plaintiff concedes the first prong of the intermediate scrutiny analysis, that the interest that the government is regulating is important. (*See* Doc. 16 at 14). Given Plaintiff's agreement that the interest regulated is "important" under intermediate scrutiny, this Court need only consider whether there is "a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139.

Relying on a history of involuntary commitment or adjudicated mental illness Congress specifically contemplated Section 922(g)(4) as a prophylactic to keep firearms out of the hands of presumptively risky persons. (Doc. 15 at 17). In enacting Section 922(g)(4), Congress certainly was aware that "a person committed to a mental institution later may be deemed cured and released"; nevertheless, "[t]he past . . . commitment disqualifies. Congress obviously felt that such a person [who had previously been committed to a mental

1   institution], though unfortunate, was too much of a risk to be allowed firearms privileges."

2   *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 116 (1983).

3          Though empirical evidence is not required to support Congress' judgment, significant

4   evidence exists.  Multiple studies indicate that those who have a history of mental illness

5   bear a significant additional risk of gun violence and suicide than those in the general

6   population, especially when there is a gun in the home.  (Doc. 15 at 18-19).  Relying again

7   on *Tyler*, Plaintiff asserts that the case law, legislative history and empirical evidence cited

8   by Defendants do not establish a reasonable fit.  While *Tyler* may have found the evidence

9   in the record in that case did not demonstrate the fit, it is not controlling here.  *Tyler* is a non-

10  precedential, Sixth Circuit opinion that stands in contrast to other cases finding that there has

11  been sufficient evidence presented to establish the requisite fit.  *See, e.g., Mai*, 2018 WL

12  784582, at *5-*6 (collecting articles).  Second, here Defendants have cited additional

13  empirical evidence, either not available at the time of the *Tyler* decision or not cited to that

14  Court, in support of its position.  In fact, the Chung article cited in Defendant's motion to

15  dismiss (Doc. 15-1 at 56), provides the exact information the Sixth Circuit asserted it would

16  need – evidence of increased risk of suicide many years after commitment.  Recognizing the

17  import of the conclusions in the Chung for his reliance on *Tyler*, Plaintiff attempts to

18  minimize the study, referring to it as "dubious."  However, the Journal of the American

19  Medical Association is one of the most respected scholarly journals in the medical field.

20  Plaintiff has not asserted or attempted to show that the authors did not apply a proper meta-

21  analysis.  Plaintiff has not cited any other scholarly articles calling into question the

22  conclusions by the Chung article.  To the contrary, the Olfson article cited by Defendants

23  (Doc. 15-1 at 79), highlights the importance of the Chung analysis.  A peer-reviewed,

24  published meta-analysis is a well-established form of scholarly research.  *See, e.g., Deutsch*

25  *v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 452-53 (E.D.N.Y. 2011); *In re Bextra &*

26  *Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1175 (N.D. Cal.

27  2007).  Plaintiff's attempt to shift the inquiry to intervening mental illness and drug abuse

28  only serves to distract from the conclusions in the Chung article: suicide rates for patients

previously hospitalized were up to 30 times that of the general population even a decade after discharge.[3] (Doc. 15-1 at 61). Notably, the *Tyler* court discussed a different meta-analysis and indicated that article did not support the government's position in that case because, contrary to the Chung article, the conclusions only addressed the time-period just after release. *Tyler*, 837 F.3d at 695-696. Finally, Plaintiff's assertion that the article acknowledges that individual patients may behave differently than aggregate data, is not a novel or surprising concept. Epidemiology studies serve to show general behavior, not to predict the behavior of any one individual. This argument is irrelevant, as the courts have recognized that just because not every person that falls within the prohibitions in 922(g) would misuse a firearm a regulation does not fail the means-end test. This is because under intermediate scrutiny the fit need not be perfect, but merely reasonable. *United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012); *see also Drake v. Filko*, 724 F.3d 426, 436 (3d Cir. 2013). While this case does not rise and fall on the Chung article alone, Plaintiff's critiques of the article are misplaced. Thus, even if the Court reaches means-end scrutiny analysis, the restriction imposed by § 922(g)(4) is a reasonable fit for the government's objective of preventing firearms violence, including suicide, and protecting public safety.

## IV. Conclusion.

For the forgoing reasons and those in Defendants' motion to dismiss, this Court should dismiss Plaintiff's complaint because Plaintiff lacks standing, because the District of Arizona is not the proper venue, and because Plaintiff has failed to state a constitutional claim under either the Second or Fifth Amendments.

Respectfully submitted this 16th day of August, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Adam R. Smart*
ADAM R. SMART
Assistant United States Attorney

[3] Notably, Mr. Sherlund is approximately a decade out from his hospitalization, as opposed to the nearly three-decade span at issue in *Tyler*.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 16, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing which served a copy on the following CM/ECF registrants:

ATTORNEYS FOR FREEDOM LAW FIRM
Marc J. Victor
Jody L. Broaddus
3185 South Price Road
Chandler, Arizona 85248
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com

*Attorneys for Plaintiff*

*s/ Adam R. Smart*
Office of the United States Attorney